JOHN H. SCHOMP, OVERSEER OF THE POOR OF THE TOWN-SHIP OF MONTGOMERY, IN SOMERSET COUNTY, PLAIN-TIFF IN ERROR, v. LUCIUS D. TOMPKINS, DEFENDANT IN ERROR.

1. In proceedings in bastardy, irregularities in the procedure before the justices cannot be taken advantage of after an appeal to the Sessions.
2. If the jurisdictional facts can be gathered from the order of the justices and the other papers in the case, it is sufficient, as every intendment should be made in favor of these orders.
3. The judgment in the Sessions, in this procedure, is to be treated as a common law judgment, to which the maxim, " *omnia præsumunter esse rite acta,*" is applicable.

In bastardy.  On error to the Supreme Court.  For opinion of the Supreme Court see 16 *Vroom* 488.

For the plaintiff in error, *John Schomp* and *A. A. Clark.*

For the defendant in error, *Gilbert Collins.*

BEASLEY, CHIEF JUSTICE.  The subject of this writ of error was a proceeding in bastardy.  Two justices of the peace, after a trial by jury before them, made an order of filiation and maintenance, and upon an appeal to the Sessions,

and after a similar trial, the like result being reached, the case was brought before the Supreme Court by *certiorari*, where the judgment against the putative father was reversed. The basis of such reversal was that the essential facts necessary to give jurisdiction to the Sessions, were not apparent upon the record.

Upon the mere opening of the papers in this case, it is manifest that there were several irregularities, of a marked character, in this procedure, in its initial stage. The forms used were not applicable to the course taken; they were the old forms when the act called for an application to two justices instead of to a single justice, as at present. But such imperfections are of no account, as has been repeatedly adjudged, in the presence of the fact of the appearance of the parties and a trial upon the merits. Thus it was said in *Hurff* v. *Overseers of Camden*, 9 *Vroom* 288, "that when the jurisdictional facts appear upon the order of the justices, the party complaining of the order cannot both appeal to the Sessions and also take advantage of the errors of the justices by *certiorari;* those errors are merely errors in procedure, and are conclusively waived by the appeal. Neither in the Sessions nor in this court will they be considered."

But the judgment of the Sessions was not, in the present case, annulled by the Supreme Court because of mere lapses in procedure of this character, the reversing judgment being avowedly based on the assumed absence, in the record, of those facts that are, by the statute, made the basis of judicial action in this class of cases in the justices and in the Sessions. Such alleged imperfections were that the application to the justice did not appear to have been made in a proper case, nor by the overseer of the proper township, nor to a justice of the proper county; and that there was nothing to show any inquiry into the facts, nor any ascertainment of the father, in the mode required by the act.

But it appears to me that these deductions were legitimate, if at all, only on the theory that the jurisdictional facts must be shown by the record in these cases, with that degree of

certainty which, in the science of pleading, was styled, "to a certain intent in every particular." By a reasonable construction of the papers before us, it would seem clear that the facts requisite to the jurisdiction of the two magistrates can be collected. Thus, first, the application was made by the proper overseer of poor. This officer belonged to the township of Montgomery, and it is stated in the order of the justices, as well as in other of the papers, that the woman was delivered of the bastard in that township. The statute requires the application to be made by the overseer "of the township where such woman may be, or of the township wherein the legal settlement of such woman may be." By the statement that the child was born in this specified township, the case, it seems to me, shows that the overseer was the officer of the township where the woman was at the time of the inception of the proceedings, for I know of no rule of law which would make it incumbent on the court to infer that the woman, after her confinement, had changed her place of abode. But there is a much more decisive statement in this respect, for this order expressly declares that the child was chargeable to the township of Montgomery; and if that be so, it is an incontestable fact that such township was the place of the legal settlement of the mother. By the fourth section of the act relating to the settlement and relief of the poor, it is provided that bastards shall be chargeable "at the legal settlement of the mother." *Rev.*, p. 835. The averment, therefore, that the child was chargeable to the township of Montgomery, was tantamount to an averment that such township was the place of her legal settlement, and it thus appears upon the record that the present application was made by the designated officer

And so, in the second place, it is shown by the transcript of the justice to whom the complaint was made, and which is part of the record in the case, that, being notified by the proper overseer of the poor to take the examination of A. G. V. D., in a case of bastardy, he caused such woman to be brought before him, and took her examination under oath, in

Schomp v. Tompkins.

writing, and that she charged the defendant in error witn being the father of such child, and that, thereupon, he issued his warrant to arrest the defendant. The magistrate then joins to himself another justice, and the case is tried before a jury upon the merits—the defendant in error being present and taking part in the proceedings, and making no objection to any of the incipient steps in the case—a proper case and proper parties were before the justices, and it seems clear that the regulations of the statute had, in substance, been complied with. For I do not think that, to a procedure of this kind, the legal rule, in its full severity, should be applied, that there will be no intendment in favor of the legality of the proceedings before a tribunal exercising a special statutory authority. The power to relieve the public from the burthen of supporting bastards, is a common law power of great antiquity, and the statutes of this state are mere regulations of such authority. Unlike the statutory provisions that regulate the removal of the poor, they provide for a trial, *in limine*, in the presence of the party inculpated, throwing around him the protection afforded by a trial by jury, and giving him an appeal to a common law court of general jurisdiction. To say that such a course of law is to be put upon the same footing with those special procedures that are unattended by any of the ordinary safeguards that are inherent in the ordinary course of the law, and which bear but a distant semblance to judicial action, would, it seems to me, be both unnecessary and impolitic. Nor do I think that this class of cases has been generally subjected to so severe a test as the rule thus deprecated. Certain it is that, in *Rex* v. *Clayton*, 3 *East* 58, such rule was deemed utterly inapplicable, for, in that case, in support of the order of bastardy, the court inferred, without proof, the death of the mother of the child, such inference being necessary to the validation of the proceeding. And Lord Ellenborough, in rendering the decision of the court, uses, on this subject, this emphatic language, viz.: "The law has been settled by so strong a series of decisions, from the time of Lord Holt down to a very

recent period, that every intendment shall be made in favor of an order of the justices, that we must see whether, *by any intendment that can be made, the present order can be supported.*" This, in my judgment, in proceedings of this nature, is the legal rule that should be liberally applied, so, that mere technicalities be not permitted to prevail against those orders, and the consequence is that, if the proceedings of the magistrates had not been appealed from, but had been for review, directly by *certiorari*, I should have been of opinion that the township would have been entitled to judgment in its favor.

But I also think the present procedure is possessed of a more stable foundation even than the one just indicated. This writ of error brings before this court the judgment of the Sessions, which is one of the established courts of this state exercising a general jurisdiction. The records and judgments of such a tribunal are to be treated in the same manner as the records and judgments of the county Circuit Courts are to be treated. The principle is that it will be presumed, in the absence of conclusive proof in the record, that such courts were possessed of jurisdiction in the particular cases adjudged by them. No reason appears why the ordinary maxim in such cases should not be applicable to these adjudications by the Court of Sessions, *i. e.,* " *omnia præsumunter rite esse acta.*" The burthen is on the plaintiff in error to show, uncontrovertibly by the record, that the want of jurisdiction existed in this case, and for such a purpose, the facts before the court are obviously inadequate.

Let the judgment be reversed.

PATERSON, J., (dissenting.)  It is evident that the proceedings in this case were conducted under the forms of a statute or laws that had been repealed.  By the Revision, other requisites were necessary to establish jurisdiction on the part of the two justices making the order, than had been laid down before.  From a careful examination, I fail to find such

Schomp v. Tompkins.

a compliance on the part of the township with existing statutes, as will warrant legal action in the matter.

The principle involved here is not whether conviction shall be avoided or obtained by technicalities. Jurisdiction of a judicial tribunal stands upon a higher plane, and those who would invoke its aid and protection must do so in a legal way. No statutory amendments should be allowed where fatal defects are apparent. A defendant should be condemned by or before a court of competent authority, and where no facts appear to give jurisdiction as prescribed by the forms of law, the case must fail. That is so here. The promoters have proceeded according to the requirements of an obsolete, and not of an operative act. This is no fault of the defendant, and no consent of his, at any stage, could relieve or cure such a defect as want of jurisdiction. That is not formal or technical, but fundamental to the substance and root of the matter. The doctrine of amendment has been given a wide latitude, an interpretation, perhaps, too liberal in scope, but just how a tribunal which has cognizance only by prerequisite forms can be invested by an amendatory process, with a vitality which it did not possess originally or at first, if not absurd, is perplexing. No appeal can be a waiver of any such error. What was bad at the beginning is fatal throughout. I am satisfied that the two justices had no jurisdiction, and failing that, the whole proceedings should be set aside, for the reasons given below at length.

*For affirmance*—COLE, PATERSON, WHITAKER. 3.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, PARKER, VAN SYCKEL, BROWN, CLEMENT. 8.